IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| INTERACTIVE TOYBOX, LLC, | § | |
|---|---|---|
| Plaintiff, | § | |
| v. | § | 1:17-CV-1137-RP |
| THE WALT DISNEY COMPANY, DISNEY INTERACTIVE STUDIOS, INC., and DISNEY CONSUMER PRODUCTS AND INTERACTIVE MEDIA, INC., | § | |
| Defendants. | § | |

## ORDER

Before the Court is the motion to dismiss or transfer filed by Defendants The Walt Disney Company ("TWDC"), Disney Interactive Studios, Inc. ("DIS"), and Disney Consumer Products and Interactive Media, Inc. ("DCPIM") (collectively "Defendants"). (Dkt. 25). In their motion, TWDC and DCPIM ask that the Court dismiss Plaintiff Interactive Toybox, LLC's ("Toybox") claims against them for lack of personal jurisdiction. (*Id.* at 14). Alternatively, all Defendants ask the Court to transfer this action to the Central District of California. (*Id.*). Toybox opposes the motion. (Resp. Mot. Dismiss, Dkt. 49). Having considered the parties' briefs, the evidence, and the relevant law, the Court will transfer this action to the Central District of California.

## I. BACKGROUND

Toybox filed this patent infringement action against Defendants, alleging that they have made and sold video games (the "Infinity Games") that include a component that infringes one of Toybox's patents. (Compl., Dkt. 1, at 8–21). TWDC and DCPIM argue that they are the wrong defendants because they have never made or sold the Infinity Games. (Mot. Dismiss, Dkt. 25, at 3). DIS admits that it developed and published the Infinity Games but denies that this district is the proper venue. (*Id.*). TWDC and DCPIM likewise dispute venue in this district should the Court not

dismiss Toybox's claims against them on jurisdictional grounds. (*Id.* at 7). Toybox disputes each of Defendants' positions. (Resp. Mot. Dismiss, Dkt. 49). The Court agrees that venue is improper in this district for all defendants. For purposes of this order, the Court will assume without deciding that it has personal jurisdiction over TWDC and DCPIM.

## II. DISCUSSION

Defendants ask the Court to transfer this action pursuant to either 28 U.S.C. § 1400(b) or 28 U.S.C. § 1404(a). Because the Court agrees that transfer is mandatory under Section 1400(b), it does not consider whether transfer is appropriate under Section 1404(a).

"Any civil action for patent infringement may be brought in the judicial district where [a] the defendant resides, or [b] where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Section 1400(b) "is the sole and exclusive provision controlling venue in patent infringement actions." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1519 (2017) (cleaned up). Federal Circuit law, rather than regional circuit law, governs the interpretation and application of Section 1400(b). *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). As the plaintiff, Toybox has the burden to establish proper venue under one of Section 1400(b)'s two prongs. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018).

Toybox has not met its burden to establish Section 1400(b)'s first prong. "The word 'residence' in § 1400(b) has a particular meaning as applied to domestic corporations: It refers only to the State of incorporation." *TC Heartland*, 137 S. Ct. at 1520 (cleaned up). TWDC is incorporated in Delaware; DCPIM and DIS are incorporated in California. (Mot. Dismiss, Dk.t 25, at 3–4). No defendant is incorporated in Texas and therefore none reside here.

Toybox argues that *TC Heartland*'s definition of "resides" does not apply in states with multiple districts, such as Texas, for which 28 U.S.C. § 1391(d) provides that a corporation is "deemed to reside in any district in that State within which its contacts would be sufficient to subject

it to personal jurisdiction if that district were a separate State." According to Toybox, *TC Heartland*'s holding that 28 U.S.C. § 1391(c) "does not supply the definition of 'reside' for Section 1400(b)" is inapplicable to Section 1391(d). (Resp. Mot. Dismiss, Dkt. 49, at 9). The United States Supreme Court first defined "resides" for purposes of Section 1400(b) in 1957,[1] and the Court in *TC Heartland* concluded that Congress had not altered that definition through subsequent amendments to 28 U.S.C. § 1931(c). 137 S. Ct. at 1517. Toybox does not suggest that *TC Heartland* was wrongly decided. Instead, Toybox contends that Congress only modified the rule for corporate residency in patent cases for the 24 states with multiple federal judicial districts but not for the remaining 26 states.

Toybox supports its position by pointing to a clause in Section 1391(d) applying the provision "[f]or purposes of venue under this chapter," the same language that led the Federal Circuit Court of Appeals to interpret the 1988 version of Section 1391(c) to define "resides" for purposes of Section 1400(b). *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1580 (Fed. Cir. 1990), *abrogated by TC Heartland*, 137 S. Ct. 1514. Toybox argues that "[b]ecause this exact and classic language of incorporation remains undisturbed in § 1391(d), there should be no question that § 1391(d) supplies the definition for § 1400(b)." (Resp. Mot. Dismiss, Dkt. 49, at 10).

However, Congress added a saving clause in 2011 to Section 1391(a) providing that Section 1391 applies "except as otherwise provided by law." 28 U.S.C. § 1391(a). The saving clause "applies to the entire section"—including Section 1391(d). *TC Heartland*, 137 S. Ct. at 1521 (cleaned up). Where other venue statutes "retain definitions of 'resides' that conflict with [Section 1391's] default definition," *id.*, those statutes' definitions supersede Section 1391's default definition.

Toybox argues that the saving clause "does not implicate § 1400(b) because §1400(b) does not provide 'otherwise.' Namely, § 1400(b) does not provide an alternate definition of 'reside' that

---

[1] *Fourco Glass Co. v. Transmirra Prod. Corp.*, 353 U.S. 222, 226 (1957).

3

conflicts with § 1391(d)." (Resp. Mot. Dismiss, Dkt. 49, at 10). Toybox is incorrect; Section 1400(b) as interpreted by the United States Supreme Court does provide "otherwise." The Court in *Fourco* defined "resides" in Section 1400(b) for purposes of domestic corporations. *TC Heartland*, 137 S. Ct. at 1520. That definition (state of incorporation) differs from Section 1391(d)'s definition of "resides" (any district in which it would be subject to personal jurisdiction). To state that Section 1400(b) contains no definition of "resides" is to ignore the fact that the United States Supreme Court has defined it. Pursuant to the saving clause, then, Section 1391(d) does not govern corporate residency in civil actions for patent infringement. In such cases, venue is governed by Section 1400(b) as interpreted by the United States Supreme Court. *See Snyders Heart Valve LLC v. St. Jude Med. S.C., Inc.*, No. 4:16-CV-00812, 2018 WL 3099709, at *8 (E.D. Tex. June 25, 2018) (reaching the same conclusion).

Toybox has also failed to meet its burden to establish Section 1400(b)'s second prong. Section 1400(b)'s second prong requires that the defendant have a "regular and established place of business" in the judicial district where the action is brought. 28 U.S.C. § 1400(b). To meet this standard, there are three requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d at 1360. This standard "requires more than the minimum contacts necessary for establishing personal jurisdiction or for satisfying the doing business standard of the general venue provision." *Id.* at 1361. "If any statutory requirement is not satisfied, venue is improper under § 1400(b)." *Id.* at 1360.

Defendants contend that they do not have a physical place in this district. (Mot. Dismiss, Dkt. 25, at 8–9). Toybox argues that the brick-and-mortar Disney Stores in the Austin area constitute physical places of Defendants because they are "owned and operated" or "controlled" by

4

Defendants. (Resp. Mot. Dismiss, Dkt. 49, at 8). Defendants reply that there is no evidence of that. (Reply, Dkt. 53, at 3).

For a "regular and established place of business" to be a "place of the defendant," several considerations apply, such as "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place." *In re Cray Inc.*, 871 F.3d at 1363. Executives for each defendant declare that the defendant entities have never maintained, owned, or rented any physical space in Texas. (Gilbert Decl., Dkt. 25-1, ¶ 4 (DIS); Headley Decl., Dkt 25-2, ¶ 5 (TWDC); Gainer Decl., Dkt. 25-3, ¶ 4 (DCPIM)). Defendants aver that Disney Stores USA, LLC is the entity that operates the stores identified in Toybox's complaint, (Marriott emails, Dkt. 35-1, at 2); they argue that its stores should not be imputed to TWDC or DCPIM for venue purposes, (Reply Mot. Dismiss, Dkt. 53, at 4).

"Except where corporate formalities are ignored and an alter ego relationship exists, the presence of a corporate relative in the district does not establish venue over another separate and distinct corporate relative." *Bd. of Regents v. Medtronic PLC*, No. A-17-CV-0942-LY, 2018 WL 4179080, at *2 (W.D. Tex. July 19, 2018).[2] "Settled law always presumes that corporations exist as separate entities." *Capital Fin. & Commerce AG v. Sinopec Overseas Oil & Gas, Ltd.*, 260 S.W.3d 67, 82 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Even "100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983). To determine whether the alter ego doctrine applies, courts consider "the total dealings of the corporation and the

---

[2] *See also Soverain IP, LLC v. AT&T, Inc.*, No. 217CV00293RWSRSP, 2017 WL 5126158, at *1 (E.D. Tex. Oct. 31, 2017), *report and recommendation adopted*, No. 2:17-CV-00293-RWS, 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017) ("[E]ven if a parent corporation controls a subsidiary's operations and the companies share a unitary business purpose, the subsidiary's presence in a venue cannot be imputed to the parent absent disregard for corporate separateness."); *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 931 (E.D. Va. 2017) ("For the [subsidiary entity] to serve as the 'regular and established place of business' permitting venue in this District, [the parent entity] and [the subsidiary] must lack formal corporate separateness."); *Post Consumer Brands, LLC v. Gen. Mills, Inc.*, No. 4:17-CV-2471 SNLJ, 2017 WL 4865936, at *2 (E.D. Mo. Oct. 27, 2017) ("[E]xcept where corporate formalities are ignored and an alter ego relationship exists, the presence of a corporate relative in the district does not establish venue.").

individual, including the degree to which corporate formalities have been followed and corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Bollore S.A. v. Imp. Warehouse, Inc.*, 448 F.3d 317, 325 (5th Cir. 2006). "There must be a 'plus factor, something beyond the subsidiary's mere presence within the bosom of the corporate family.'" *Licea v. Curacao Drydock Co.*, 627 F. App'x 343, 348 (5th Cir. 2015) (quoting *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 176 (Tex. 2007)).

To meet its substantial burden to show that TWDC or DCPIM are ignoring corporate formalities and that Disney Stores USA, LLC is their alter ego, Toybox points to several pieces of evidence.[3] For TWDC, Toybox points to (1) TWDC's 2016 annual report, in which the company states that it "currently owns and operates 223 stores in North America." (Resp. Mot. Prot. Order, Dkt. 47, at 3); and (2) a public statement about TWDC's commitment to human rights, in which TWDC states that it is committed to fostering safe and inclusive workplaces in "our Disney-owned stores." (Supply Chains Act Statement, Dkt. 47-9).[4] TWDC also appoints the heads of its subsidiaries. (Resp. Mot. Prot. Order, Dkt. 47, at 3).

For DCPIM, Toybox points to (1) a statement on Disney's website that DCPIM "is home to . . . a leading retail business (Disney store)," (D23 Expo webpage excerpt, Dkt. 47-10, at 3); and (2) a statement in TWDC's 2016 annual report that TWDC's operations "include retail, online and wholesale distribution of products through The Disney Store," (Annual report, Dkt. 47-8, at 6). This evidence does not establish that TWDC and DCPIM are ignoring corporate formalities or that they are exerting such a level of control over Disney Stores USA, LLC that the subsidiary is merely an alter ego for TWDC or DCPIM. Because Toybox has not met its burden to overcome the

---

[3] Toybox does not argue that DIS has a place of business in this district; its only argument that venue is proper here under Section 1400(b) is that DIS resides here. (Resp. Mot. Dismiss, Dkt. 49, at 7–11).

[4] The statement also identifies Disney Stores USA, LLC as "an indirect, wholly-owned subsidiary" of TWDC. (Supply Chains Act Statement, Dkt. 47-9).

presumption of corporate separateness, the Court cannot conclude that the Disney Stores located in this district constitute "a place of the defendant" for TWDC, DCPIM, or DIS. Toybox has therefore not met Section 1400(b)'s requirements; venue is improper in this district. Meanwhile, because Defendants admit that they are headquartered in the Central District of California, venue is proper in that district under Section 1400(b). (Mot. Dismiss, Dkt. 25, at 7).

### III. CONCLUSION

For the reasons given above, Defendants' motion to dismiss or transfer, (Dkt. 25), is **GRANTED IN PART**. The motion is granted insofar as the Court **ORDERS** that this case be **TRANSFERRED** to the Central District of California.

**SIGNED** on October 24, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE